Allen, J.
The plaintiff instituted an action against the defendants in the Circuit court of Harrison, to recover for work done and materials provided for the company. After issue joined on the plea of non assumpsit, a general demurrer to the declaration was filed, which was sustained. No objection has been urged to the form of the declaration. But it is maintained, that as *170 this company is composed of the Governor, and other officers of government, having no personal interest in its concerns, but acting merely as the organs of the Commonwealth in effecting a public improvement, no action he against it; and that, if liable to be sued at all, the Court in which the action was brought had no jurisdiction to render any judgment against it. It appears from the act of incorporation, that the officers of the company are mere trustees for the Commonwealth, and that the road was to be constructed entirely at the public expense. It is not pretended that an individual can maintain an action against the State, unless she consents to submit herself to the jurisdiction of the Courts; but this exemption the State may waive, and in fact has done so, by authorizing individuals to proceed against her in certain designated Courts for claims against her. When for her own convenience and to effect some specific object, she creates an agency, under a corporate name, and invests it with corporate powers, she may also subject it to the responsibilities of ordinary corporations. By the act incorporating this company, the Governor, Treasurer, Attorney General and Second Auditor, for the time being, and their successors, are constituted a body politic and corporate, with a corporate name, authorized to hold and dispose of property, to make contracts, and invested with power to sue and be sued, plead and be impleaded. These are the terms used in most, if not all acts of incorporation, whether for public or private purposes; and when adopted by the State in constituting a corporation to effect a purpose of her own, must receive a similar construction. Nor is there any thing in the act of incorporation which would indicate a different intention on the part of the Legislature. On the contrary, as it was foreseen that individuals might be aggrieved as soon as the company commenced operations, by the location of the road and the erection of bridges, buildings and other works ne *171 cessary for the construction and preservation of the road, provision was made by the 5th section, authorizing the party aggrieved to institute proceedings in the County or Superior court where the land was situated, against the company to recover his damages. The existence of the company did not cease on the completion of the road; it is charged with the duty of preserving it; and to do so must employ labour, procure materials, and of course enter into contracts to effect these objects. Should controversies grow out of these proceedings, and individuals be aggrieved, considerations of justice as well as of convenience, required that a remedy should be afforded. This, it seems to me, has been done in the act of incorporation, by investing the company not only with power to sue, but the capacity to be sued. The question really is not whether any action will lie against this company, but whether, having regard to the objects of the corporation, the action will lie for the particular grievance complained of.
It was not decided in the case of Sayre v. The N. W. Turnpike Road, 10 Leigh 454, that no action will lie against this corporation; all that the case decided, was that the action would not lie against this company for the injury there complained of. The suit was brought to recover damages for a remote and consequential injury to the property of the plaintiff. The declaration averred, that owing to the defective construction of a bridge by the company, it fell, and was carried by the stream against the mill and dam of the plaintiff, whereby they were destroyed. The reasons which governed the Court, in holding that an action for such an injury could not be maintained against this company, are not given. The case was probably considered as falling under the influence of the cases of the Governor and Co. of the British Cast Plate Manufacturers v. Meredith, 4 T. R. 794; Boulton v. Crowther, 9 Eng. C. L. R. 227, and Lansing v. Smith, 8 Cow. R. *172 146; in which it was held that commissioners or trustees, acting under the authority of law, to effect a public improvement for public purposes, in which they have no direct private interest, and who do not exceed their jurisdiction, are not liable to an action for a consequential injury resulting from an act they are authorized , to do.
The present case is not of that character; it is founded upon contract, such as the company was necessarily authorized to make for the purpose of preserving the work committed to its charge; and there is nothing in the words or spirit of the law which exempts the company from such an action.
The jurisdiction of the Court of the county in which the cause of action arose is ascertained, when it is determined that the company is liable to be sued like other corporations, unless there be some express provision of law giving jurisdiction to some particular tribunal to the exclusion of all others. Nothing of the kind is found in the charter of incorporation. On the contrary, the 5th section, providing a speedy remedy for parties aggrieved by the location of the road, gives the jurisdiction to the Courts of the counties wherein the land was situated. In all other cases the provisions of the act of 17th March 1837, p. 44, will apply. That act provides, that in all actions or suits instituted against any corporation, process issued from the Court of the county or corporation where the cause of action arose shall be sufficient to compel appearance. The act applies to all corporations, and was in full force when this suit was instituted and when the judgment was pronounced.
By the act of March 5th, 1846, authority was given to institute suits against this and similar corporations, in the Courts at Richmond; and all suits then depending, or thereafter brought against them in other Courts, were directed to be transferred to the Courts above mentioned. But as this act passed after the judg *173 ment appealed from was pronounced, the correctness of that judgment must he tested by the previous laws. The act of 1846, however, would seem to contain a legislative recognition of the right to institute the suit in the county where the cause of action arose: For it merely denies to such Court the power to render a judgment; but treats the suit as a pending controversy, properly commenced, and directs it to be transferred to be proceeded in to final judgment. This transfer, which extends to all the papers and proceedings in the cause, is to be made by the Judge of the Court where the suit is pending, and is a matter with which this Court has nothing to do. When the cause goes back and is reinstated on the docket, the order to transfer may be made. I think the suit was well brought; and that the demurrer to the declaration should have been overruled.
The other Judges concurred in the opinion of Allen. J.
Judgment reversed, demurrer overruled, and cause remanded.